IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GEVAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12 C 1297 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC.; | ) | Judge John Z. Lee |
| T. UTKE; DR. PATTERSON; DR. CARTER; | ) | |
| H. MOSS; R. BROWN-REED, E. MARTIN, | ) | |
| D. EDWARDS; DR. GHOSH; M. HARDY; | ) | |
| C. FASANO; A. MATUZAS; R. BEATTIE; | ) | |
| L. WILLIAMS; DR. SCHAEFER; DR. FUNK; | ) | |
| S.A. GODINES, not individually, but in his | ) | |
| capacity as Director of the ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS; and | ) | |
| BOSWELL PHARMACY SERVICES,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

David Gevas, an inmate at Stateville Correctional Center, who is represented by counsel, has sued Wexford and various employees of the state and Wexford pursuant to 42 U.S.C. § 1983, alleging that Defendants exhibited deliberate indifference to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[2] Both Wexford

---

[1] In an earlier order, the Court granted Boswell's motion for summary judgment. *See* Order 9/24/15, ECF No. 389. Dr. Patterson was dismissed pursuant to a settlement. *See* Minute Order 6/19/14, ECF No. 290.

[2] There are two sets of Defendants in this case. The state employees are: Regina Beattie (a pharmacy technician), Royce Brown-Reed (the Healthcare Unit Administrator at Stateville), Marcus Hardy (the Warden), Darryl Edwards (the Assistant Warden of Programs), Charles Fasano (the Agency Medical Coordinator), and Salvador Godinez (Director of IDOC), who he sued in his official capacity (collectively, "State Defendants"). *See* State Defs.' LR 56.1 ¶¶ 17, 35, 40, 54, 62, 72, ECF No. 356. The Wexford employees are: Tiffany Utke (the nurse in the optometry clinic), Dr. Parthasarathi Ghosh (the Stateville Medical Director until March 2011), Dr. Imhotep Carter (the Stateville Medical Director starting July 2011), Dr. Ronald Schaefer (a staff physician at Stateville), Dr. Arthur Funk (Regional Medical Director), LaTanya Williams (a

Defendants and State Defendants have moved for summary judgment. For the following reasons, Wexford Defendants' motion [331] and State Defendants' motion [354] are granted in part and denied in part.[3]

**Factual Background**

Gevas is in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center. *See* State Defs.' LR 56.1 ¶ 1, ECF No. 356. IDOC contracts with Wexford Health Sources, Inc. to provide certain medical care to IDOC inmates. IDOC and Wexford are required to administer health care services and medical treatment to inmates, which includes ensuring that inmates receive prescribed medications and medical products. *See* IDOC Wexford Contract at 5–15, Pl.'s Resp. State Defs.' LR 56.1, Ex. 5, ECF No. 379.

In 2010, Gevas was prescribed contact lenses. *See* Wexford Defs.' LR 56.1 ¶ 6, ECF No. 341. Gevas also had glasses that he could wear, but the parties dispute whether the glasses alone were sufficient for him to be able to see normally. *See* Pl.'s Resp. Wexford Defs.' LR 56.1 ¶ 7,

---

physician assistant at Stateville), and Heidi Moss (the supervising nurse) (collectively, "Wexford Defendants"). *See* Wexford Defs.' LR 56.1 ¶¶ 30, 109, 128, 143, 156, 163, 173, ECF No. 341.

[3] After the motions were fully briefed, Gevas filed a motion for leave to file an amended complaint [392] and a motion to supplement the summary judgment record [390]. In the proposed amended complaint, Gevas seeks to extend the relevant period beyond the date he filed his original complaint in 2012. Allowing the amendment at this late stage of the proceedings would unduly prejudice the Defendants. Accordingly, the motion [392] is denied.

As to the motion to supplement the summary judgment record, Plaintiff attached a 400-page expert report prepared for another case and asks the Court to consider it in ruling on the motions. Without pointing to any particular pages of the report, Gevas argues that it "discusses the IDOC correctional facilities' systemic problems." Pl.'s Mot Supplement at 2, ECF No. 390. The Court declines the invitation to sift through the report and extract the portions that may be helpful to Gevas. Thus, that motion [390] is also denied.

ECF No. 372; Pl.'s Resp. State Defs.' LR 56.1 ¶ 3.[4] At some point before January 5, 2011, Gevas complained to Dr. Patterson—an optometrist hired by Wexford—that the contacts were irritating his right eye. Wexford Defs.' LR 56.1 ¶ 10. Initially, Dr. Patterson gave Gevas hard contact lenses, but after Gevas insisted they were the wrong kind, Dr. Patterson ordered 30-day disposable lenses. *See id.* ¶ 12. After receiving the correct lenses, Gevas filed grievances with the prison because the contacts kept breaking after two to four uses. *See* Gevas Dep. at 64:14–24, Wexford Defs.' LR 56.1, Ex. C. During the relevant periods, Tiffany Utke was the nurse assigned to the optometry clinic, where she was in charge of scheduling appointments for inmates. Wexford Defs.' LR 56.1 ¶¶ 30, 35.

Gevas also suffered from shoulder pain, for which he had been prescribed Tramadol as well as Indocin, Mobic, and Ibuprofen. *See id.* ¶¶ 55, 57. Because of Tramadol's addictive potential, the prescriptions were typically for only a few weeks, after which it was Gevas's responsibility to schedule an appointment so that a physician could reassess and, if appropriate, represcribe the drug. *See id.* ¶¶ 101, 117, 120. Gevas contends that, at times, he was unable to schedule appointments to be reassessed. For example, Gevas was given a 30-day prescription of Tramadol on January 3, 2011, which ran out February 2, 2011. *See id.* ¶ 155. Although Gevas had been scheduled to see a doctor on February 3, 2011, that appointment was cancelled. *See* Grievance Officer's Report, Ghosh Dep., Ex. 3, Wexford Defs.' LR 56.1, Ex. G; *see also* Ghosh Dep. at 106:20–107:15. Gevas was then reassessed and given a new prescription of the drug on February 24. *See* Wexford Defs.' LR 56.1 ¶ 155.

---

[4] Gevas points to a 2011 Wexford document that approves replacement contact lenses because he is "unable to obtain adequate vision with eyeglasses alone." GEVAS000172, Ghosh Dep., Ex. 5, Wexford Defs.' LR 56.1, Ex. G.

In addition to Tramadol, Gevas had been prescribed a variety of other drugs, including Remeron, Benadryl, and Depakote. *See* State Defs.' LR 56.1 ¶ 11. He alleges that at various times since 2010 he has not received his prescribed dosage because the drug was out of stock. *See id.* The parties dispute exactly how often Gevas did not receive his medications as prescribed. Pl.'s Resp. State Defs.' LR 56.1 ¶ 12.

All four of the drugs in question are what are called "watch-take" medications, meaning that the inmates cannot keep them in their cell and the nurses distribute each individual dose. *See* Olsen-Foxon Dep. at 12:6–24, 14:6–18.[5] For watch-take medications, the nurses in charge of distributing them were also in charge of placing a sticker on the refill sheet when a refill was needed. *See* State Defs.' LR 56.1 ¶ 23.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is

---

[5] Gevas claims that there are other drugs that he did not receive that were not watch-take. *See* Pl.'s Resp. State Defs.' LR 56.1 ¶ 16. Those drugs, however, were not part of his complaint.

properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

To state a claim for deliberate indifference, a plaintiff must allege: (1) he was suffering from an objectively serious medical condition, and (2) the defendants were deliberately indifferent to this condition. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). For the second requirement, "[d]eliberate indifference requires more than negligence, rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014). While "[e]ven gross negligence is insufficient to impose constitutional liability," a defendant meets the standard of criminal recklessness under deliberate indifference when he ignores a known risk. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Furthermore, even if delayed treatment did not exacerbate an injury, "deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam).

## Analysis

### I. Count I: Ocular Care

In Count I of Gevas's complaint, he alleges that Dr. Patterson and Utke were deliberately indifferent in providing ocular care. In particular, Gevas complains that after being told that his right contact lens did not fit properly, he did not receive a replacement until six months after being seen by Dr. Patterson. *See* Compl. ¶¶ 27–29. When Gevas received a replacement, he contends that Dr. Patterson and Utke ordered the wrong type of lens. *See id.* ¶ 29. He eventually received disposable contact lenses. Because Patterson has been dismissed from this case pursuant to a settlement, Utke is the only remaining defendant on Count I.

Plaintiff has not presented any evidence to show that Utke is personally liable for the allegations in Count I. Gevas's allegations in the complaint lump Utke and Patterson together as

5

the individuals responsible for allegedly taking six months to order a properly fitting contact and for ordering the wrong type of lens. Gevas does not dispute, however, that Utke's role in his eye care consisted only of (1) asking the optometrist whether to put him on the schedule and (2) distributing Gevas's contacts. *See* Pl.'s Resp. Wexford Defs.' LR 56.1 ¶¶ 34, 42. Gevas has presented no evidence that Utke was responsible for determining when to order new contacts or deciding what type of contacts to order. *See Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012) (noting that individual liability under § 1983 requires personal involvement in the alleged constitutional deprivations).

To the extent that the theory for holding Utke individually liable is based on her consent to the alleged constitutional deprivations, nothing in the record supports that theory. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (noting that individual liability may be proper when the individual knew of the condition and made the decision to leave it untreated). Gevas does not dispute that every time Utke received a complaint from him, she followed the procedure and put him on the schedule to see the optometrist. *See* Pl.'s Resp. Wexford Defs.' LR 56.1 ¶ 35.

Accordingly, the Court grants Wexford Defendants' motion as to Count I.

## II. Count II: Gaps in Tramadol

In Count II, Gevas asserts that, during eight different periods in 2010 and 2011, his prescription for Tramadol—a pain medication—was allowed to expire. *See* Compl. ¶¶ 53–61.

As an initial matter, the Wexford Defendants argue that it was Gevas's fault that the Tramadol prescription expired. *See* Wexford Defs.' Mem Supp. Mot. SJ at 13, ECF No. 331. To renew a prescription for a drug like Tramadol, inmates had to schedule an appointment and be reevaluated by a medical professional. *See* Wexford Defs.' LR 56.1 ¶ 120. Gevas's claim, however, is not merely that the Defendants allowed his prescription to expire. Gevas also argues that he requested to see a doctor in order to be reevaluated, but he was denied the opportunity to

do so. *See* Pl.'s Mem. Opp'n Wexford Mot. SJ at 10, ECF No. 371. Take, for example, the period between February 3, 2011, and February 24, 2011. It is undisputed that Gevas was given a 30-day prescription of Tramadol on January 3, 2011, which ran out on February 3, 2011. *See* Defs.' Am. Rule 56.1 Stmt. ¶ 155. Then, on February 24, 2011, he received another 30-day prescription of the drug. *See id.* During the gap in February, it was Gevas's responsibility to request an appointment, and in fact he did so. Gevas had been scheduled to see Dr. Ghosh on February 3, 2011, but that appointment was cancelled, which meant he could not be seen until February 24, 2011. *See* Grievance Officer's Report; *see also* Ghosh Dep. at 106:20–107:15. Thus, the crux of Gevas's claim is that he was not allowed to see a doctor immediately after his prescription ran out, resulting in gaps.

The Wexford Defendants highlight the testimony from medical personnel stating that Tramadol should not be prescribed indefinitely. *See* Wexford Defs.' Mem Supp. Mot. SJ at 15. Although they may be correct, there is nothing in the record showing that the gaps in Tramadol were a conscious effort to wean Gevas off of the drug. Instead, examples such as the cancelled appointment on February 3 suggest that the gaps were not the result of a medical decision.

Defendants also argue that Gevas's claim fails because he has not presented verifying medical evidence that he was harmed by the gaps in Tramadol. When a plaintiff's claim is based on delay rather than denial of medical assistance to an inmate, the plaintiff is required to offer verifying medical evidence that the delay caused some degree of harm. *See Williams v. Liefer*, 491 F.3d 710, at 714–15 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."); *see also Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). Verifying evidence is required to show that it was the delay, and not the underlying condition, that caused the harm. *See Williams*, 491 F.3d at 714–15. Here,

when the evidence in the record is construed in Gevas' favor, a reasonable jury could find that the gap in Gevas's Tramadol prescriptions unnecessarily prolonged and exacerbated his pain.

For these reasons, the Court denies Wexford Defendants' motion for summary judgment as to Count II. State Defendants' motion for summary judgment does not make any argument specifically directed at Count II of the complaint. Instead, that motion argues that none of the State Defendants is individually liable for any of the allegations. Only three State Defendants are named in the complaint for Count II: Marcus Hardy, Darryl Edwards, and Charles Fasano. For the reasons stated below as to Count III, only Charles Fasano can be individually liable for the actions challenged by Gevas. Accordingly, the Court grants State Defendants' motion for Count II as to Hardy and Edwards and denies the motion as to Fasano.

### III. Count III: Medications Out of Stock

Lastly, Gevas contends that various Wexford and State Defendants were deliberately indifferent by allowing his medications to run out of stock, which resulted in him missing dosages. Both sets of Defendants focus their challenges on the notion that Gevas has not set forth sufficient evidence to prove personal involvement sufficient for liability under § 1983. *See* Wexford Defs.' Mem. Supp. Mot. SJ at 16–18, ECF No. 342; State Defs.' Mem. Supp. Mot. SJ at 10–13, ECF No. 355.

For an individual to be liable for deliberate indifference it is not enough that the person know of the harmful condition. Instead, the individual must, for instance, impede the prisoner's ability to receive treatment, condone the action that gives rise to the condition, or be in a position to take corrective action. *See Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011). Thus, courts should assess whether the official's position would have required action in the face of the prisoner's protests. *Cf. Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009) ("The division of labor is important not only to bureaucratic organization but also to efficient performance of

8

tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.").

1. **Wexford Individual Defendants**

The Wexford Defendants argue that, once the prescription orders were completed, the doctors and medical directors were not in charge of ensuring that the medications were in stock. *See* Wexford Defs.' Mem. Supp. Mot. SJ at 16–18. To assess this argument, it is necessary to look at each Defendant's position with respect to Gevas's complaint. Dr. Ghosh and Dr. Carter each occupied the position of Medical Director at different times relevant to this suit. In that position, they were responsible for the general oversight of the health care unit, which includes the pharmacy. *See* Pl.'s LR 56.1 Stmt. Additional Facts ¶¶ 32–33, 35; IDOC Wexford Contract at 10–12. Assuming that each of them knew that Gevas was not consistently receiving his medications,[6] Ghosh and Carter were both in a position to investigate the reason why the drugs prescribed to him were not always in stock and take corrective action. In fact, other courts have found that the Medical Director had the power to act and remedy the failure to regularly deliver medication. *See Flournoy v. Ghosh*, 881 F. Supp. 2d 980, 989 (N.D. Ill. 2012).

Similarly, Nurse Moss, in her position as supervising nurse, had responsibility over the administration of Gevas's medicine. Moss allegedly knew that Gevas was not receiving his prescribed medications on a consistent basis. Pl.'s LR 56.1 Stmt. Additional Facts ¶ 24.[7] Moreover, as Gevas points out in his brief, Moss had the ability to redress his concerns because

---

[6] Neither set of Defendants argues that the individuals did not know that Gevas had complained about certain drugs being out of stock.

[7] The State Defendants challenge the statement in paragraph 24 on the basis that Gevas supports the allegation by citing to his complaint. *See* Wexford Defs.' Resp. Pl.'s LR 56.1 ¶ 24. The citations, however, are to the prison's responses to his grievances that are attached to the complaint and, furthermore, are referenced elsewhere in the record. *See, e.g.*, Moss Dep. at 62:5–11, Wexford Defs.' LR 56.1, Ex. R.

she was in charge of nurses and the administration (and tallying) of medicine. *See* Pl.'s Mem. Opp'n Wexford Mot. SJ at 13; IDOC Wexford Contract at 89. Given that Moss had the power to correct the nurses' failure to administer the medicine or order refills, she cannot escape responsibility by asserting that she lacked personal involvement. *See Taylor v. Garcia*, 2015 WL 5895388, at * 6 (N.D. Ill. 2015) ("Third, in her role as a supervisor, Nurse Garcia purportedly had knowledge that Plaintiff and other inmates were not receiving watch-take medicines, such as Elavil, yet chose not to investigate or rectify the problem, such as by retraining or disciplining her nurses for that misconduct.").

The other three Wexford defendants are a different matter. Gevas's allegations as to Dr. Funk, who was the Regional Medical Director, fail to point to any evidence suggesting that the administration of drugs fell within his purview. *See* Pl.'s LR 56.1 Stmt. Additional Facts ¶ 36. Dr. Funk was in charge of various facilities in Northern Illinois, and Gevas has pointed to nothing in the record to suggest that the supervision of the pharmacy at Stateville was within his direct control. *See* Funk Dep. at 8:4–21, Wexford Defs.' LR 56.1, Ex. Q; *cf. Burks*, 555 F.3d at 595 ("The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.").

The remaining two Wexford Defendants, Dr. Schaefer and P.A. Williams, were medical professionals that on occasion saw Gevas at the prison's health clinic. *See* Schaefer Dep. 11:20–12:1, Wexford Defs.' LR 56.1, Ex. P; Williams Dep. 15:5–20, Wexford Defs.' LR 56.1, Ex. H. Although they both prescribed medications to Gevas, he points to nothing in the record suggesting that the administration of the medications were within their responsibilities. Thus, as to Dr. Schaefer and P.A. Williams, the Court agrees with Defendants that, after writing the

prescriptions, they could reasonably rely on the pharmacy and other staff to make sure Gevas received his medication.

### 2. State Individual Defendants

As to the State Defendants, the Court must first address the threshold argument that they could not have been deliberately indifferent to Gevas's medical needs because they delegated his care to the prison's medical professionals. *See* State Defs.' Mem Supp. Mot. SJ at 8–10, ECF No. 354. Although it is true that nonmedical officials are allowed to delegate certain decisions to medical personnel, if the officials know that the doctors are mistreating a prisoner and ignores the inmate's complaints, the officials may be liable. *See Arnett*, 658 F.3d at 755.

Turning to each State Defendant, the Court finds that only some of the State Defendants could be held individually liable. Marcus Hardy, the Warden of Stateville, and Darryl Edwards, the Assistant Warden of Programs, were too far removed from the pharmacy's operation to be liable in this case. Assuming they knew that Gevas's medications were not always in stock, both Hardy and Edwards stated they would pass on such complaints to the Healthcare Unit Administrator (Defendant Brown-Reed), who would investigate and handle the problem. *See* State Defs.' LR 56.1 ¶¶ 44, 55–56 (noting that Brown-Reed would investigate complaints that a prisoner was not receiving certain medications). Just as the warden of each prison is entitled to relegate the provision of medical care to the medical staff, *see Burks*, 555 F.3d at 595, the warden can also delegate the investigation and resolution of complaints about the administration of medicine to the officials in charge of the health care unit. Given Hardy's and Edwards's position in the prison's hierarchy, they cannot be individually liable for Gevas's complaint that his drugs were not continuously in stock, even if his complaints had reached them.[8]

---

[8] Gevas amended his complaint to add Salvador Godinez as a defendant in his individual capacity. In their motion for summary judgment, the State Defendants argue that the counts

The same conclusion applies to Defendant Regina Beattie, who is a pharmacy technician at Stateville. She received refill orders from nurses or medical technicians and placed orders to Boswell, the company that provided pharmaceutical services to the prison. *See* State Defs.' LR 56.1 ¶¶ 20–23. Beattie did not dispense medication to any of the inmates. *See* State Defs.' LR 56.1 ¶ 25. Although at this stage the Court must make all reasonable inferences in Gevas's favor, he has not presented any evidence from which a jury could infer that Beattie was personally involved in his medications being out of stock. Moreover, there is nothing in the record to suggest that Beattie was responsible for or could have addressed Gevas's complaints.

The remaining two State Defendants, however, may be constitutionally liable for Gevas's claims as to the unavailability of his medications. Royce Brown-Reed was the Healthcare Unit Administrator at Stateville, and Charles Fasano was the Agency Medical Coordinator. *See* State Defs.' LR 56.1 ¶¶ 35, 62. In his deposition, Fasano explained that when confronted with a complaint that a prisoner was not receiving his prescribed medication, either he or Brown-Reed would investigate and address the complaint. *See* State Defs.' LR 56.1 ¶¶ 38, 65. Assuming that they both knew about Gevas's complaints, they were in a position to take corrective action and address the problem. Thus, a fact-finder could determine that, in failing to address the situation, Brown-Reed and Fasano were deliberately indifferent to Gevas's medical need.

### 3. Wexford

Wexford, a private corporation contracting with Illinois, can be liable under § 1983. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Because there is no respondeat superior liability under § 1983, Gevas must point to an unconstitutional policy or custom. *See id.*

---

against Godinez should be dismissed. Despite having amended his complaint to add Godinez, Gevas does not make any argument for why he is a proper defendant. Thus, Gevas has waived any such argument. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003).

If, as here, there is no evidence of a written policy, Gevas must show that there was a widespread practice so permanent and well settled as to constitute a custom. *See Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). On summary judgment, Gevas can make this showing by pointing to a series of bad acts that together raise the inference of such a policy. *See Shields*, 746 F.3d at 796.

Wexford argues that the few instances in which Gevas's medications were out of stock are not sufficient to support an inference of a policy. *See* Wexford Defs.' Mem Supp. Mot. SJ at 18–19. The problem with Wexford's argument is that, although the exact number of instances is disputed, Wexford Defendants admit that "at certain times [Gevas] did not receive medications 'without interruption.'" Wexford Defs.' Resp. Pl.'s LR 56.1 ¶ 4, ECF No. 380. Neither party provides an analysis of the Medication Administration Records, but given Wexford's admission that "at certain times" Gevas did not receive the medications he was prescribed, it is possible to infer that this goes beyond one or two isolated instances. *Cf. Palmer v. Marion Cty.*, 327 F.3d 588, 596 ("Palmer's alleged personal knowledge of two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice by the Jail's staff that is so well settled that it constitutes a custom or usage with the force of law."). Viewing all inferences in Gevas's favor, as the Court must do at this stage, a reasonable jury could find an unconstitutional custom from the various times he did not receive his medication because it was out of stock.[9]

---

[9] To the extent that Wexford argues that it was IDOC's responsibility to ensure that inmates received their medications, Gevas has put forth evidence to create a triable issue as to that fact. Gevas points to the contract between Wexford and IDOC, which states that Wexford is responsible for arranging for "the provision of medical services to IDOC inmates," including pharmacy services. IDOC Wexford Contract at 5. It is for the jury to determine the exact scope of Wexford's responsibility under this agreement. *See Taylor*, 2015 WL 5895388, at *8 (rejecting the same argument based on Wexford's contract with IDOC).

**Conclusion**

For the reasons stated herein, Wexford Defendants' motion [331] and State Defendants' motion [354] are granted in part and denied in part. The motions are granted as to Counts I. Wexford Defendants' motion is denied as to Count II. State Defendants' motion for Count II is denied as to Defendant Fasano and granted as to Defendants Hardy and Edwards. For Count III, the Court grants the motions as to Defendants Funk, Schaefer, Williams, Hardy, Edwards, Beattie, and Godinez. The motions for Count III are denied as to Defendants Carter, Ghosh, Moss, Brown-Reed, Fasano, and Wexford. Gevas's motions to file an amended complaint [392] and to supplement the summary judgment record [390] are denied.

**IT IS SO ORDERED.**　　　　　　　　　　**ENTERED   3/29/16**

_____

**John Z. Lee**
**United States District Judge**