# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GEVAS, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 1297 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| WEXFORD HEALTH SOURCES, INC.; | ) | |
| T. UTKE; DR. PATTERSON; DR. | ) | |
| CARTER; H. MOSS; R. BROWN-REED; | ) | |
| E. MARTIN; D. EDWARDS; DR. | ) | |
| GHOSH; M. HARDY; C. FASANO; | ) | |
| A. MATUZAS; R. BEATTIE; | ) | |
| L. WILLIAMS; DR. SCHAEFER; | ) | |
| DR. FUNK; S.A. GODINEZ, not | ) | |
| individually, but in his capacity as | ) | |
| Director of the ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| and BOSWELL PHARMACY | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Gevas ("Gevas"), an inmate at Stateville Correctional Center, sued Wexford Health Sources, Inc., and various Wexford employees ("Wexford Defendants"), as well as various state employees, under 42 U.S.C. § 1983. Gevas alleges deliberate indifference to his medical needs in violation of the Eighth Amendment. On March 29, 2016, this Court granted in part and denied in part the Wexford Defendants' motion for summary judgment [398]. The Wexford Defendants now move the Court to reconsider those portions of its motion for summary judgment that the Court denied [402]. For the reasons that follow, the Wexford Defendants' motion for reconsideration is denied.

## Background

Gevas's complaint raises three counts against some or all of the Wexford Defendants. In Count I, Gevas alleges that Dr. Patterson and Tiffany Utke, a Wexford nurse, were deliberately indifferent to his medical needs by failing to provide suitable contact lenses in a timely manner. Compl. ¶¶ 22–52, ECF No. 63. Dr. Patterson has been dismissed from the case pursuant to a settlement. Minute Order 6/9/14, ECF No. 290. The Wexford Defendants moved for summary judgment on Gevas's claims as against Nurse Utke, arguing in part that Gevas failed to show Utke was personally liable for failing to provide for his ocular needs. Defs.' Mem. Supp. Summ. J. 11, ECF No. 333. The Court agreed, finding no evidence from which a jury could conclude that Utke was responsible for depriving Utke of appropriate treatment. Mem. Op. & Order 6, ECF No. 398. The Court therefore granted the Wexford Defendants' motion as to Count I.

In Count II, Gevas claims that Wexford and various Wexford employees—Dr. Imhotep Carter, Dr. Parthasarathi Ghosh, Dr. Ronald Schaefer, Dr. Arthur Funk, and physician's assistant LaTanya Williams—along with various state employees, were responsible for gaps occurring in his prescription for Tramadol, a pain medication. Compl. ¶¶ 53–75. The Wexford Defendants moved for summary judgment as to this count, arguing in part that there was no evidence from which a jury could infer personal involvement on the part of the named Wexford employees. Defs.' Mem. Supp. Summ. J. 13–14. The Court denied the Wexford Defendants' motion as to Count II, citing a missed appointment with Dr. Ghosh as one example

2

of evidence from which a jury could conclude that the Wexford Defendants were responsible for gaps in Gevas's Tramadol prescription, and thus deliberately indifferent to his medical needs. Mem. Op. & Order 7.

Finally, in Count III, Gevas asserts that Wexford and three of its employees—Drs. Carter and Ghosh and Nurse Heidi Moss—along with various state employees, failed to keep a sufficient supply of other medications in stock, resulting in Gevas missing dosages of certain prescriptions. Compl. ¶¶ 76–97. Again, the Wexford Defendants moved for summary judgment on the basis that the named Wexford employees could not be found personally responsible. Defs.' Mem. Supp. Summ. J. 16–17. The Court disagreed, explaining that Drs. Ghosh and Carter, as medical directors at Stateville, and Nurse Moss, as supervising nurse, were in positions of responsibility such that a reasonable jury could find each knew of Gevas's unmet medication needs and could have taken corrective action. Mem. Op. & Order 9–10.

The Wexford Defendants also moved for summary judgment on the claims against Wexford itself, arguing that Gevas had failed to provide evidence from which a reasonably jury could find a policy, custom, or practice necessary to impose liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658, (1978). Defs.' Mem. Supp. Summ. J. 18–19. The Court denied the motion as to Wexford, noting that the Wexford Defendants had admitted that Gevas did not receive the medications he was prescribed at certain times, and finding that "a

reasonable jury could find an unconstitutional custom from the various times he did not receive his medication because it was out of stock." Mem. Op. & Order 13.

## **Legal Standard**

Under Federal Rule of Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). But while motions to reconsider under Rule 54(b) are permitted, "they are disfavored." *Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). They serve a very limited purpose: correcting manifest errors of law or fact and presenting newly discovered evidence. *Id.* (citations omitted). This is a heavy burden for the moving party and makes a motion for reconsideration an inappropriate medium to "rehash" past arguments, *id.* (citations omitted), or revisit improvident strategic decisions made earlier. *Birdo v. Dave Gomez*, 2016 WL 6070173, at *1 (N.D. Ill. Oct. 17, 2016) (citation omitted). Motions for reconsideration will be granted only where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Given these exacting standards, "issues appropriate for reconsideration 'rarely arise and the motion to reconsider should be equally rare.'"

4

*Burrell v. United Parcel Serv., Inc.*, No. 14 C 5127, 2016 WL 4720024, at *2 (N.D. Ill. Sept. 8, 2016) (quoting *Bank of Waunakee*, 906 F.2d at 1191).

## Analysis

The Wexford Defendants have moved the Court to reconsider its previous ruling on two grounds. First, they contend that the Court failed to adequately address their argument that, as to Counts II and III, Gevas failed to produce evidence from which a reasonable jury could infer that the individual Wexford Defendants were personally responsible for deliberate indifference to his medical needs. Second, regarding Wexford itself, they assert that the Court did not sufficiently explain why a reasonable jury could find a policy, custom, or practice necessary for liability under § 1983. The Court will address each of these arguments in turn.

### I. Individual Wexford Defendants' Personal Involvement

The Wexford Defendants present two bases on which they seek reconsideration of the Court's denial of their summary judgment motion as to the individual defendants' personal involvement. First, they state that the Court's opinion "does not appear to address the personal involvement standard" with regard to Count II, Defs.' Mot. Recons. Summ. J. 6, ECF No. 402, and make a similar argument as to Count III. *Id.* at 10.

But this argument misconstrues the Court's opinion. In discussing Count II, the Court offered, as an "example," a description of one of the gaps in treatment that are the basis of Gevas's claim in Count II. Mem. Op. & Order 7. The Court

5

stated that Gevas was scheduled to see Dr. Ghosh, but his appointment was cancelled, resulting in a gap in his prescription. *Id.* This is an explicit discussion of the personal involvement that the Wexford Defendants claim is lacking in the Court's opinion.

And, for the sake of completeness, there is additional evidence in the record from which a jury could find the requisite personal involvement beyond the Court's example. It is undisputed that each of the named Wexford employees was in a position to prescribe Gevas Tramadol. Defs.' LR 56.1 ¶¶ 124 (Ghosh), 136 (Carter) 151–52 (Schaefer), 155 (Williams), 160 (Funk), ECF No. 341. To that end, Gevas claims that he named at least one of the employees in each of his grievances regarding Tramadol and verbally informed each of them that he was experiencing pain, but that they ignored his needs. Pl.'s Resp. Opp. Defs.' Mot. Recons. 4–5, ECF No. 372.[1] On these bases, a reasonable jury could conclude that the named Wexford

---

[1] In support of this proposition, Gevas cites to two provisions in his statement of facts that are supported only by his complaint and grievances attached to it. Pl.'s LR 56.1 ¶¶ 22–23, ECF No. 372. The Wexford Defendants objected to these facts on the basis that they rely solely on materials inappropriate for consideration on summary judgment. Defs. Resp. Pl.'s LR 56.1 ¶¶ 22–23, ECF No. 380. The Court's review of the record, however, indicates broader support for Gevas's assertions. In his deposition, Gevas noted that his Tramadol prescription was permitted to expire "up to 11 times," Defs.' LR 56.1, Ex. 3, Gevas Dep. at 71:22–24. He also identified each of the named Wexford employees and explained that he voiced his concerns to them concerning the gaps in his Tramadol prescription. *Id.* at 212:6–220:7. For example, in discussing Defendant Williams, Gevas acknowledged that he "made some complaints to her consistent with what [he's] claiming in this case." *Id.* at 217:8–12. Drawing all reasonable inferences in Gevas's favor, this testimony is evidence from which a reasonable jury could draw the requisite personal involvement on the part of the named Wexford employees.

6

employees were personally involved in causing gaps to occur in Gevas's Tramadol prescription.

The Wexford Defendants take particular objection to the Court granting its motion for summary judgment as to Nurse Utke in Count I—on the basis that Gevas has presented no evidence of her personal involvement—while denying its motion as to the other individual defendants. Defs.' Reply 3, ECF No. 410. As the previous discussion makes clear, however, the simple explanation for the Court's differing rulings is the difference in evidence that Gevas has presented as to each defendant.

With regard to Count III, the Wexford Defendants again misread the Court's opinion, which discusses at length how a reasonable jury could conclude that Drs. Ghosh and Carter and Nurse Moss were personally involved in allowing his medications to run out. Drs. Ghosh and Carter each occupied the position of Medical Director, and thus assuming they knew Gevas was not consistently receiving medications, both were in a position to investigate and remedy his treatment.[2] Mem. Op. & Order 9. And Nurse Moss, who occupied the position of

---

[2] The Court's opinion cited *Flournoy v. Ghosh*, 881 F. Supp. 2d. 980 (N.D. Ill. 2012). The Wexford Defendants object to this authority in part because the plaintiff in *Flournoy* presented evidence that the defendant knew the plaintiff was not receiving medications, whereas here, they argue, proof of knowledge is lacking. Mot. Recons. at 11. But as the Court noted in its opinion, the Wexford Defendants did not argue that Drs. Ghosh and Carter lacked the requisite knowledge, and cannot now raise the argument in a motion to reconsider. Mem. Op. & Order 9 n.6. The Wexford Defendants also object to *Flournoy* on the basis that there is no evidence in this case that Drs. Ghosh and Carter were responsible for overseeing administration of medication and could take corrective action. Mot. Recons. at 11. But as the Court explained in its opinion, Drs. Ghosh and Carter were in a position of responsibility as Medical Director where they could have taken corrective action. Mem. Op. & Order 9–10.

supervising nurse, was in charge of the administration of Gevas's medicine and allegedly knew he was not receiving it. *Id.* at 9–10.[3] Thus, the Court fairly addressed and disagreed with the Wexford Defendants' argument based on lack of personal involvement.

In addition to their argument based on lack of personal involvement, the Wexford Defendants seek reconsideration on the ground that "it is apparent that the duties and responsibilities pertaining to the [challenged] conduct were those of other prison personnel, and not these Defendants." Mot. Recons. at 6. This argument, however, contravenes the Court's explicit holding in which it rejected Wexford's attempt to eschew responsibility for Gevas's medical care, notwithstanding the plain language of its contract with IDOC, finding instead that Gevas had raised a triable issue of fact on this issue. Mem. Op. & Order 13 n.9. This holding applies both to Wexford itself and the individual defendants, as explained in the very authority the Court cited. *Taylor v. Garcia*, No. 11 C 7386, 2015 WL 5895388, at *6 (N.D. Ill. Oct. 6, 2015) (quoting *Flournoy*, 881 F. Supp. 2d at 989). The Court therefore denies the Wexford Defendants' motion to reconsider its rulings as to the individual defendants.

---

[3] Nurse Moss is a helpful comparator for addressing the Wexford Defendants' objection to the Court's finding that State Defendant Regina Beattie did not have sufficient personal involvement, whereas Drs. Ghosh and Carter and Nurse Moss did. Mot. Recons. at 12. While Drs. Ghosh and Carter and Nurse Moss each occupied positions of responsibility regarding Gevas's treatment and medication, Defendant Beattie was merely a technician tasked with refilling and placing orders. Mem. Op. & Order 12. As the Court explained, there was no evidence to suggest Beattie was responsible for or could have addressed Gevas's complaints. *Id.*

## II. Wexford's Policy, Custom, or Practice

As to Wexford itself, the Wexford Defendants seek reconsideration based primarily on their belief that the Court misapplied Seventh Circuit precedent. They argue that the Court's determination that a reasonable jury could conclude that there was a policy, custom, or practice of causing gaps in Gevas's Tramadol prescription and failing to provide Gevas access to medication is not fairly supported by the authority that the Court cites.

Specifically, the Wexford Defendants contend that the Court's reference to *Shields v. Illinois Department of Corrections.*, 746 F.3d 782 (7th Cir. 2014), was mistaken. Mot. Recons. at 13. The Court cited *Shields* for the proposition that Gevas can raise a triable issue of fact as to a policy, custom, or practice by "pointing to a series of bad acts that together raise the inference of such a policy." Mem. Op. & Order 13. The Wexford Defendants misinterpret this citation as an attempt to analogize to *Shields*'s facts. To that end, they argue that, as in *Shields*, all Gevas alleges is an isolated "series of bad acts," which should be insufficient to permit an inference of a policy, custom, or practice. Mot. Recons. at 13. But the series of bad acts in *Shields* was known to be approximately three isolated incidents, 746 F.3d at 796, and the Court therefore cited the case only for the general proposition that a series of bad acts can raise an inference of a policy, even though such an inference could not be raised in *Shields* itself. In this case, on the other hand, the Wexford Defendants have admitted that Gevas's prescriptions went unfilled "at certain

9

times." Mem. Op. & Order 13. As the Court noted in its opinion, when it draws all reasonable inferences in Gevas's favor, there is a genuine dispute as to the number of times Gevas was denied medication and whether this number supports a policy, custom, or practice. *Id.* Thus, this case is significantly different from *Shields*, and the Court did not suggest otherwise.

Additionally, the Wexford Defendants' argument that Gevas cannot show a widespread practice because he cannot show conduct as to any other inmates, Mot. Recons. at 14, is simply incorrect and misrepresents the authority they cite. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience."). While the Seventh Circuit has recognized the difficulty a plaintiff faces in proving a policy or custom based only on his or her own experience, *id.*, the evidence in the record in this case is such that a jury could conclude a policy or custom exists.[4]

---

[4] The Court acknowledges that its opinion addressed the issue of Wexford's policy, custom, or practice primarily by reference to Gevas's claim that "he did not receive his medication because it was out of stock." Mem. Op. & Order 13. But Wexford's admission that Gevas did not receive medications at certain times appears equally probative of Gevas's claim that Wexford caused gaps in his Tramadol prescription. Additionally, as noted previously, there is evidence in the record that Wexford personnel allowed Gevas's Tramadol prescription to expire up to eleven times. Gevas Dep. 71:22–24. The Seventh Circuit has declined to "adopt any bright-line rules defining a 'widespread custom or practice,'" setting something of a lower boundary in holding that three isolated incidents of misconduct do not suffice. *See Shields*, 746 F.3d at 796; *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Additionally, the Court has held that "to survive summary judgment, a plaintiff need not present a full panoply of statistical evidence showing the entire gamut of a defendant's past bad acts to establish a widespread practice or custom. Instead, it is enough that a plaintiff present competent evidence tending to show a general pattern of repeated behavior." *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006). Here, based on Gevas's representation of eleven permitted expirations and the Wexford Defendants' admission that gaps occurred, Gevas has presented a triable issue

Accordingly, the Court rejects the Wexford Defendants' request that the Court reconsider its denial of summary judgment as to Wexford's policy, custom, or practice.

**Conclusion**

For the reasons stated herein, the Wexford Defendants' motion to reconsider [402] is denied.

**IT IS SO ORDERED.**  ENTERED  12/20/16

_/s/ John Z. Lee_

**John Z. Lee**
**United States District Judge**

---

of fact as to whether a policy, custom, or practice of permitting his Tramadol prescription to expire existed.

11